## Illinois Central Railroad Company v. Covington.

(Decided November 20, 1913).

### Appeal from Graves Circuit Court.

1. Carriers—Duty to Furnish Suitable and Sanitary Cars for Shipment of Live Stock.—A railroad company is under a duty not only to furnish reasonably safe and suitable cars for the carriage of live stock, but it must furnish cars that are in a reasonably clean and sanitary condition for such purpose, and if it fails to perform this duty it will be liable in damages to the owner of the stock who has suffered loss thereby, if the loss is attributable to the unfit or unsanitary condition of the cars.

2. Carriers—Not Liable for Breach of Duty Unless Loss Can be Traced to Its Failure.—The mere fact that a carrier may be negligent in putting and carrying cattle in a filthy and unsanitary car does not authorize a recovery against it unless there is evidence tending to show that the condition of the car produced the disease that injured or killed the stock. In every case where it is sought to recover damages for breach of duty, there must be evidence connecting the loss for which damages are sought with the breach of duty or else there can be no recovery.

TRABUE, DOOLAN & COX, ROBBINS & THOMAS, R. G. ROBBINS, C. L. SIVLEY and R. V. FLETCHER for appellant.

W. J. WEBB for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In March, 1911, the appellee shipped from East St. Louis to Wingo, Ky., over the lines of the appellant company forty-three head of cattle in one car. The shipment arrived in due time at its destination, and was in the car about 21 hours. After the cattle were unloaded they were taken a few miles out in the country to the farm of appellee. About four days afterwards one of them died, and in the course of ten days afterwards nine of them died and several of the others were injured by the ailment that caused the death of the ones that died.

Claiming that the death of and injury to the cattle was occasioned or brought about by the filthy and unsanitary condition of the car in which they were shipped from East St. Louis to Wingo, the appellee brought this suit to recover from the company damages for the loss he sustained. On a trial the jury assessed his recovery at the full amount claimed, and from the judgment entered accordingly this appeal is prosecuted.

The sole ground upon which a recovery was sought was that the filthy, unsanitary condition of the car caused the cattle to contract what is known as infectious dysentery, there being no charge of negligence on the part of the company in any other respect.

The evidence for appellee tended to show that the cattle were purchased at the stock-yards in East St. Louis and were loaded in the car in which they were shipped on the day of their purchase and within a few hours thereafter; that the cattle when purchased and loaded were in good condition; that the stock-yards in which they were housed were clean and dry and the weather cool and clear.

A number of witnesses who saw the cattle as they were being unloaded at Wingo examined the car and testified that the sides and legs of the cattle were covered with a black, muddy-looking substance, and that there was a soft, muddy filth from eight to twelve inches deep in the bottom of the car. Some of these witnesses who were in the habit of shipping stock said that it was the filthiest car they had ever seen and totally unfit to ship stock in. Another witness who cleaned the filth out of the car said that he hauled away about fifteen two-horse wagon loads.

On the other hand, the evidence for the railroad company was to the effect that the car was properly bedded and in a clean, sanitary condition before the cattle were loaded at East St. Louis.

It may be safely said that the decided weight of the evidence and the reasonable inference to be drawn therefrom establish in a very satisfactory way that the car in which these cattle were carried was in an unfit and unsanitary condition at the time the cattle were loaded at East St. Louis, and the condition of the car was much worse when it arrived at Wingo, as the cattle by moving about in the car had worked the filth that was in it into a slushy state.

There is no difficulty about the law applicable to this case. A railroad company is under a duty not only to

furnish reasonably safe and suitable cars for the carriage of live stock but it must furnish cars that are in a reasonably clean and sanitary condition for such purpose, and if it fails to perform this duty it will be liable in damages to the owner of the stock who has suffered loss thereby, if the loss is attributable to the unsafe or unfit or unsanitary condition of the cars. But the mere fact that a carrier may be negligent in putting and carrying cattle in a filthy and unsanitary car does not authorize a recovery against it unless there is evidence tending to show that the condition of the car produced the disease that injured or killed the stock. In every case where it is sought to recover damages for a breach of duty, there must be evidence connecting the loss for which damage is sought with the breach of duty or else there can be no recovery.

This being our understanding of the law applicable to the case, the only remaining question is, was there sufficient evidence to show that the filthy and unsanitary condition of this car produced the disease from which some of appellee's cattle died and others were injured.

Upon this point one experienced veterinary surgeon introduced as a witness in behalf of appellee testified that, in his opinion, the death and injury of these cattle was caused by a disease known as infectious dysentery and that this disease could be and was in this case produced by the unsanitary condition of the car.

On the other hand, two veterinary surgeons introduced in behalf of the railroad company testified that the disease from which the cattle suffered was not produced by the condition of the car.

The evidence does not show in an entirely satisfactory manner that the condition of the car produced the disease from which it is said the cattle died, but there is some evidence that it did produce the disease and there is no evidence whatever that the death of these cattle was attributable to any other cause. We think there was sufficient evidence to take the case to the jury on this issue.

Complaint is made that a hypothetical question submitted to Dr. Warner was broader than the facts justified. In a way this is true, but so much of the question as exceeded the limits of the evidence could not well have been prejudicial to the rights of appellant.

The instructions are criticised, but we do not think they are open to objection. The jury were told in substance that unless they believed from the evidence that

the car was more than ordinarily filthy and unsanitary, and that this filthy and unsanitary condition of the car caused the cattle to contract infectious dysentery, they should find for the defendant. They were further told that although they might believe there was sufficient evidence to sustain the theory that the unsanitary condition of the car caused the disease complained of, yet if they could from the evidence attribute the disease to any other cause than the unsanitary condition of the car, they should find for the defendant.

Upon the whole case we see no reason for disturbing the verdict and it is affirmed.